UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ADVANCED MECHANICAL SERVICES,
INC., et al.,                                                                               Plaintiffs,

v.                                            Civil Action No. 3:14-cv-388-DJH-CHL

AUTO-OWNERS INSURANCE COMPANY,                          Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs Advanced Mechanical Services, Inc.; Advanced Grinding & Machine, Inc.; Beechtree, Inc.; Robert R. Setree, II; and Beverly L. Setree claim that they are entitled to additional payment under an insurance policy purchased from Defendant Auto-Owners Insurance Company. (Docket No. 1-2) According to Plaintiffs, Auto-Owners breached the policy by failing to fully reimburse them for storm damage to their business property. (*Id.*, PageID # 8) They further assert that this failure amounted to bad faith and violated the Kentucky Unfair Claims Settlement Practices Act. (*Id.*, PageID # 9-11)

Auto-Owners has moved to strike Plaintiffs' expert disclosures and for summary judgment, arguing that the disclosures are untimely and incomplete and that Plaintiffs' claims fail without expert testimony. (D.N. 99, 109) After the motion for summary judgment was fully briefed, Plaintiffs moved to amend and supplement their expert disclosures. (D.N. 111) But the amended disclosures, like the original, are deficient. Because Plaintiffs lack expert testimony to support their claim for replacement of machinery, and because they have not shown that they are entitled to replacement of undamaged siding to achieve "matching," Auto-Owners' motion for summary judgment will be granted.

# I.

This action arises out of an insurance policy Plaintiffs purchased from Auto-Owners effective August 20, 2011. Pursuant to the policy, any lawsuit against Auto-Owners must be "brought within 2 years after the date on which the direct physical loss or damage occurred." (D.N. 99-5) It is undisputed that the insured building—a machine shop located at 4644 Illinois Avenue in Louisville, Kentucky—suffered hail damage on April 28, 2012, which falls within the two-year timeframe. (*See* D.N. 1-2, PageID # 5) According to Plaintiffs, the property was also struck by lightning on that date, irreparably damaging several of the machines used in their business. Robert Setree testified at his deposition that he went to the shop the day after the storm and discovered that the electrical panel box had "blown up." (D.N. 99-3, PageID # 468) Setree further testified that the transformers and utility pole were replaced after the storm. (*Id.*, PageID # 474-77) However, a representative of Louisville Gas & Electric testified that LG&E's records show no power outage at 4644 Illinois Avenue on April 28, 2012, and the only replacement of the pole and transformers serving that address occurred on February 27, 2011—beyond the scope of the policy. (D.N. 99-3, PageID # 484-85, 490-91)

Auto-Owners replaced the "blown up" panel box, as well as the roof and the siding on two sides of the building, which were damaged by hail. (*See* D.N. 107-2, PageID # 583 ¶ 7, 584 ¶ 12, 586 ¶ 17) However, Plaintiffs allege that Auto-Owners owes them further reimbursement. (D.N. 1-2, PageID # 8) They seek to recover the cost of replacing the machines that were allegedly destroyed and profits they claim to have lost as a result of the machines' destruction. (D.N. 107-1, PageID # 561-65) In addition, Plaintiffs contend that Auto-Owners must replace the two undamaged sides of the building "to conform with the two sides it [already] replaced." (*Id.*, PageID # 566) Auto-Owners has moved for summary judgment on all claims. (D.N. 99)

**II.**

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

**A.     Lightning Damage**

The parties' primary dispute concerns the machines Plaintiffs claim were rendered inoperable by lightning on April 28, 2012. Auto-Owners, pointing to the LG&E records and Plaintiffs' discovery responses, maintain that Plaintiffs cannot prove the machines were damaged on that date, if they were damaged at all. Plaintiffs, meanwhile, contend that their proposed experts will provide the necessary proof and that even without expert testimony, they could prevail by relying on Robert Setree's affidavit and the report of one of Auto-Owners' experts. With or without the proposed experts, Plaintiffs' claims fail.

1.  **Proposed Expert Testimony/Motion to Strike**

Auto-Owners asks the Court to strike Plaintiffs' first set of expert disclosures and deny their request to amend or supplement those disclosures. (D.N. 109, 115) The disclosures Plaintiffs made on February 17, 2017, were clearly deficient. Federal Rule of Civil Procedure 26 requires that expert disclosures "be accompanied by a written report—prepared and signed by the witness—" that includes the following information:

> (i)     a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii)    the facts or data considered by the witness in forming them;
> (iii)   any exhibits that will be used to summarize or support them;
> (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Plaintiffs disclosed seven experts but attached only one report, by Kris Phillips of Bluegrass Lightning Consultants, Inc. (D.N. 99-2) The report makes no mention of Phillips's qualifications, compensation, or previous experience as an expert witness.[1] Phillips's opinions, which he states are based on a visual "inspection of the premises and the reports of the owner," comprise a single paragraph:

> [W]e have determined that the damage reported and witnessed here is most likely the cause and a transient voltage caused by a lightning strike to a portion of the Electric Utility System. This is evidenced by the blown transformer adjacent to the subject property. Also, it is most likely that this surge event entered the subject property causing the reported damage as listed. Furthermore, based on our observations, there is a high likely hood [sic] that other parts of the buildings['] electrical and mechanical systems were affected. This is including but not limited to HVAC, Lightning [sic], and any installed Machining Equipment.

---

[1] The only hint as to Phillips's possible qualifications is provided by the stationery upon which his report is printed, which states at the bottom: "Kris Phillips, Owner/President – Certified Master L P I and U L Master Label Installer." (*E.g.*, D.N. 99-2, PageID # 456)

(*Id.*, PageID # 457) The remainder of Phillips's report consists of photographs of the purported damage. (*See id.*, PageID # 457-64)

Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004)). Although Plaintiffs do not expressly assert that their failure to provide disclosures in compliance with Rule 26(a)(2)(B) "was substantially justified or harmless," they protest that their newly retained counsel was overwhelmed at the time the disclosures were due and that Auto-Owners unreasonably refused to extend the disclosure deadline. (D.N. 107-1, PageID # 567; *see id.*, PageID # 566) They further note that "[a]lthough [Auto-Owners] argues that it had inadequate information with which to respond with its own expert disclosures that were due on March 17, 2017, it had already retained its own experts and, in fact, timely disclosed them within the deadlines imposed by the Court." (*Id.*, PageID # 567)

The Court agrees with Auto-Owners that the reasons outlined by Plaintiffs do not satisfy Rule 37. First, the question is not whether Auto-Owners was prejudiced by Plaintiffs' inadequate disclosures, but rather whether the failure to adequately disclose was "harmless." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003). "The advisory committee's note to Rule 37(c) 'strongly suggests that "harmless" involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Id.* (quoting *Vance v. United*

5

*States*, No. 98-5488, 1999 U.S. App. LEXIS 14943, at *16-*17 (6th Cir. June 25, 1999)). There is no "honest mistake" asserted here, and Plaintiffs' perfunctory disclosure did not provide Auto-Owners with "sufficient knowledge" of their experts' qualifications and conclusions. *Id.* Nor have Plaintiffs established that their failure to comply with the disclosure requirements was substantially justified, as they merely explain that their counsel was faced with the not-uncommon challenge of juggling a new case with an existing caseload.² (*See* D.N. 107-1, PageID # 566-67) Exclusion of Plaintiffs' proposed experts is therefore warranted, as is denial of their request to supplement. *See Sommer*, 317 F.3d at 692.

Even if the proposed expert testimony were permitted, however, Plaintiffs' claims would not survive summary judgment. In their belated amended expert disclosures, Plaintiffs offer the reports of two proposed experts, Warren Wolfe and William Piepmeyer. (D.N. 111-1) Neither report is sufficient under Rule 26, Federal Rule of Evidence 702, or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

      **a.    Warren Wolfe**

Wolfe describes his qualifications as follows:

> Warren Wolfe has Masters of Engineering in electrical engineer [sic] with areas of concentration in the electromagnetic arenas including but not limited to the following areas: lazars [sic] and electro-optical systems, fiber optic design and implementation, signal processing, microwaves, electromagnetic fields and waves EMF and electromagnetic pulses EMP, antennas and design, communications and communication systems, AC/DC machines and motors and power generation, and power distribution segment of the spectrum as well as Modern industrial electronics and robotics, electronic component fabrication and design, and computer interfacing and networking design. No publications authored but rather solved commercial and industrial manufacturing problems all over the world for hundreds for suppliers [sic] of Honeywell International in the electronics manufacturing industry for components and finished goods supplied and new product development driving roughly $2.4 Billion in annual revenue.

---

² The Court notes that Plaintiffs did not file a motion to extend the disclosure deadline when Auto-Owners declined to agree to an extension.

(D.N. 114-1, PageID # 693-94)  Wolfe's report largely consists of responses to the conclusions of Auto-Owners' expert.  (*See generally id.*)  He concludes that the Advanced Machine Services site "did in fact incur a light[n]ing strike event in whole or in part resulting in the failure of equipment and operational functionality"; however, he admits that he "can't determine the actual point in time as to the actual event" and merely relies on Robert Setree's representation as to when the lightning strike and damage occurred (although he erroneously refers to Setree as the defendant and states the claimed date of loss as April 27, 2012, instead of April 28).  (*Id.*, PageID # 691 ("He claimed his equipment was working previous to this date and now no longer functions."))

In support of his findings, Wolfe cites—and quotes verbatim—an Exhibit A that was not attached to the report initially filed.  (*See* D.N. 111-1)  Plaintiffs later supplemented Wolfe's report to include Exhibit A, which is a twenty-two-page printout of the Wikipedia entry for lightning.  (D.N. 121-1)  This further undermines Wolfe's conclusions; "[f]ederal courts across the nation have continually recognized that Wikipedia's reliability is doubtful, given that by its own statement, 'Anyone with Internet access can write and make changes to Wikipedia articles.'"  *Doe v. Mich. Dep't of Corr.*, No. 13-14356, 2014 U.S. Dist. LEXIS 72376, at *22 n.3 (E.D. Mich. May 28, 2014) (quoting *About Wikipedia*, http://en.wikipedia.org/wiki/Wikipedia: About (May 13, 2014, 5:54 p.m.); *see United States v. Lawson*, 677 F.3d 629, 650-51 (4th Cir. 2012) (citing numerous federal cases in which use of Wikipedia was criticized).  "Wikipedia is not a learned treatise and lacks the reliability required by the federal rules to form the basis of an expert's opinion."  *Hamilton v. Menard, Inc.*, No. 3:10 CV 1997, 2011 U.S. Dist. LEXIS 92883, at *4 (N.D. Ohio Aug. 19, 2011) (citing *Campbell ex rel. Campbell v. Sec'y of Health & Human*

*Servs.*, 69 Fed. Cl. 775, 781 (Fed. Cl. 2006); R. Jason Richards, *Courting Wikipedia*, 44 Trial 62 (Apr. 2008)).

Federal Rule of Evidence 702 provides that

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

As explained in *Daubert* and clarified in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), Rule 702 imposes a "gatekeeping obligation" upon district courts to ensure that expert testimony is reliable as well as relevant. *Id.* at 147 (citing *Daubert*, 509 U.S. at 589). Here, given that Wolfe's ultimate opinion—that a lightning strike occurred on April 28, 2012, damaging Plaintiffs' machinery—rests on a Wikipedia entry and Robert Setree's self-serving claim (*see* D.N. 114-1, PageID # 691, 693), the Court cannot find that his testimony is "based on sufficient facts or data" or "the product of reliable principles and methods" that have been "reliably applied . . . to the facts of the case." Fed. R. Evid. 702. Wolfe's opinion is therefore inadmissible and may not be considered for purposes of summary judgment. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible." (alteration in original) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)).

b.  **William Piepmeyer**

Plaintiffs' second expert report, by William Piepmeyer, also falls short. Piepmeyer provides more information about his qualifications than does Wolfe. (*See* D.N. 114-2, PageID #

695) But like Wolfe, he fails to offer a valid opinion as to the date the damage occurred, instead listing as "[e]vidence found" that "[a]ll machines listed above failed at the same time indicating a common event." (*Id.*, PageID # 698) No basis is provided for this finding, which appears to be inconsistent with the attachment to Piepmeyer's report—Plaintiffs' interrogatory answer indicating that with the exception of one machine, the last date of operation prior to April 28, 2012, was either unknown or "on or about 2010." (*Id.*, PageID # 696-97) Moreover, Piepmeyer notes that while some electrical damage to machinery causes immediate failure, some damage may not be apparent until "much later." (*Id.*) If anything, this supports Auto-Owners' contention that any lightning damage to the machines likely occurred in February 2011, not on April 28, 2012, as Plaintiffs claim.

Nor does Piepmeyer even conclude that a lightning strike occurred; instead, he finds, based on evidence of "arcing" and the supposed "common event," that Advanced Grinding & Machine experienced "a catastrophic overvoltage event." (*Id.*) Although an expert need not "have absolute certainty in formulating his opinion," the opinion "must not rest purely on speculation." *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (citing *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010); *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000)). Piepmeyer does not explain how the "[e]vidence found" supports his conclusion, or where the evidence came from. (D.N. 114-2, PageID # 698) His report thus raises the same concerns under Rule 702 and *Daubert* as Wolfe's: it does not appear to be "based on sufficient facts or data," and no "reliable principles and methods" are evident. Fed. R. Evid. 702. Finally, even if Piepmeyer's opinion were admissible, it would not establish that Plaintiffs' machines were damaged by lightning on April 28, 2012. *See City of Chicago v. Westchester Fire Ins. Co.*, No. 08 C 5535, 2010 U.S. Dist. LEXIS 90490, at *17-*18 (N.D. Ill. Sept. 1, 2010)

9

(noting expert's admission that overvoltage may be attributable to causes other than lightning); *Collins Radio Co. v. Bell*, 623 P.2d 1039, 1053 (Okla. Ct. App. 1980) (listing possible overvoltage causes including defective generator, mechanical malfunction, power shortage, and employee error in addition to lightning).

### 2. Plaintiffs' Other Evidence

Plaintiffs maintain that even without expert testimony, they can establish that their equipment was damaged by lightning on the claimed loss date. They point to Plaintiff Robert Setree's affidavit and the report of Auto-Owners' expert, Kenneth Becker of Donan Engineering. (D.N. 107-1, PageID # 569-70) Neither adequately supports their claims.

### a. Robert Setree

The affidavit of Robert Setree was attached to Plaintiffs' response in opposition to the motion for summary judgment. (D.N. 107-2) In it, Setree asserts that the date of loss was April 28, 2012, and that "[e]ach of the machines[] damaged by the lightning strike[] w[as] working and in good order just prior to the lightning strike." (*Id.*, PageID # 583) He further states that he "ran each machine for which a claim has been made for lightning damage[] in April 2012 and in the months prior. . . . Each machine[] for which damage is being sought[] was in working order and was running during the month of April, just prior to the storm and in the many previous days prior to the storm." (*Id.*, PageID # 586-87) But these assertions directly contradict Plaintiffs' interrogatory answers, which stated that only one machine, a Leadwell lathe, had been used immediately prior to April 28, 2012.[3] (*See* D.N. 108-3, PageID # 647) "If an affidavit is untimely and inconsistent with prior discovery responses, it is inadmissible and should not be considered." *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 509 (6th Cir. 2003) (citation

---

[3] Plaintiffs' answers also indicated that shop computers and a transformer had last been in use two to three days before the alleged lightning strike. (D.N. 108-3, PageID # 648)

omitted); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, No. 98-4284, 1999 U.S. App. LEXIS 29273, at *11-*14 (6th Cir. Nov. 3, 1999) (reviewing precedent and finding that affidavits submitted in opposition to summary-judgment motion that contradicted plaintiff's interrogatory answers did not create genuine issue of material fact); *cf. Bush v. Compass Grp. USA, Inc.*, No. 16-6258, 2017 U.S. App. LEXIS 5248, at *19 (6th Cir. Mar. 23, 2017) (where post-deposition affidavit directly contradicted deposition testimony, district court "properly decline[d] to consider the contradictory statements in the affidavit" and "would have been justified in striking the affidavit entirely" (citing *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986))). Setree's affidavit thus does not create a factual dispute as to whether the machines were damaged by lightning on April 28, 2012.

> b. **Kenneth Becker**

Nor is Becker's report helpful to Plaintiffs. Although Becker concluded that the BR6 panel was likely damaged by lightning (D.N. 107-3, PageID # 591-92), he also determined that it was unlikely the damage occurred on the date Plaintiffs claim:

> The StrikeNet report shows there was storm and lightning activity in the area of the loss location on the reported date of loss. However, there is no indication that any lightning strike occurred at the immediate site, and the report shows the closest activity was recorded as being 3/10 mile from the site. It is improbable that this recorded lightning activity would have caused the damage found in panelboard BR6. In order to cause the damage found, the discharge energy would have had to travel along the LG&E grid, pass through the 480 VAC transformer bank, and enter into panelboard BR6.
>
> The area of the shop on Illinois Avenue is heavily populated with commercial and light industrial sites, with each having at least one electrical service. In travelling the required distance to reach the shop, the energy from a lightning strike would be expected to dissipate via multiple and alternative route(s) to Earth, a probable event given the number of LG&E customers (i.e., alternate routes) connected to the same grid in the area, particularly those closer to the point of the strike. The catastrophic damage found in panelboard BR6 also

> makes it probable that if a lightning strike is the cause, then the upstream 480 VAC transformer bank should display obvious signs of significant damage or malfunction as well. Records obtained from LG&E indicate no transformer replacement or repairs were made following the reported date of loss.

(*Id.*, PageID # 592) Becker's finding that the BR6 panelboard—which is not the subject of a claim in this case—was damaged by lightning at some time other than April 28, 2012, is not enough to carry Plaintiffs' claim past summary judgment.

### c. Damage to Machines

Moreover, as Auto-Owners observes, Plaintiffs have presented no proof, expert or otherwise, as to the type or extent of damage to their machines.[4] (D.N. 108, PageID # 611) Robert Setree states vaguely in his affidavit that the machines suffered "electrical damage" and had "burnt marks." (D.N. 107-2, PageID # 585) He also asserts that the machines cannot be repaired, but he provides no basis for this assertion beyond his "own experience" and the fact that two prior repair attempts were unsuccessful. (*Id.*, PageID # 585; *see id.*, PageID # 584-85) Testimony that the machines are damaged beyond repair requires "scientific, technical, or other specialized knowledge," and Setree has not been identified as an expert. Fed. R. Evid. 701(c). To the extent he relies on the representations of individuals who unsuccessfully attempted to repair the machines (*see id.*, PageID # 584-85), his affidavit contains inadmissible hearsay and may not be considered. *See Alpert*, 481 F.3d at 408-09 (citing *U.S. Structures*, 130 F.3d at 1189). And without proof of damages, Plaintiffs' claim for breach of the policy fails. *See Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007) (noting that damages are an essential element of breach-of-contract claim).

---

[4] Upon initial inspection by Auto-Owners' expert Roy Grubbs on April 1, 2016, at least one of the machines, the OKK MCH-450 Horizontal Machining Center, "powered on and all axes moved." (D.N. 108-2, PageID # 644) Auto-Owners claims that the Leadwell lathe "bears no evidence of a lightning strike and suffers from no loss of functionality"; however, it fails to support this assertion with a citation to the record. (D.N. 108, PageID # 613)

### B. Lost Income

The parties also dispute whether Beverly Setree may offer opinions concerning Plaintiffs' alleged decrease in revenue following the April 28, 2012 storm. (*See* D.N. 99-1, PageID # 448-49; D.N. 107-1, PageID # 571) As an officer of each of the plaintiff corporations with responsibility for "maintain[ing] the[ir] books and financial records" (D.N. 107-5, PageID # 598), Setree is qualified to provide lay opinion testimony regarding the companies' lost income. *See Lativafter Liquidating Tr. v. Clear Channel Commc'ns, Inc.*, 345 F. App'x 46, 51 (6th Cir. 2009) (finding no abuse of discretion in admission of opinion testimony by plaintiff business's investor/board member who "had personal, particularized knowledge of [the business's] value"); *see also* Fed. R. Evid. 701 advisory committee's note ("[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert."). Because Plaintiffs lack expert testimony to support their underlying claim, however, lost-profits testimony is unnecessary.[5]

### C. Hail Damage

Plaintiffs also assert that they are entitled to replacement of undamaged siding on the building to match the siding already replaced by Auto-Owners. (D.N. 107-1, PageID # 575-78)

---

[5] The Court notes that the calculations underlying Beverly Setree's opinions are somewhat suspect in any event. The spreadsheet accompanying Setree's affidavit shows that Advanced Grinding Machine, Inc. had annual sales in the $100,000-$300,000 range from fiscal years 2000 to 2010 but experienced a dramatic drop in sales—from $115,772 to $50,645—in fiscal year 2011, a year and a half *before* the alleged lightning damage. (D.N. 107-6) Sales for the fiscal year ending June 30, 2012 increased slightly to $70,349; since then, the company's annual sales have decreased steadily, from $36,182 in fiscal year 2013 to $12,123 in fiscal year 2016. (*See id.*) As set forth on the spreadsheet, Plaintiffs assert that they are entitled to the difference between the monthly sales average from fiscal years 2006-2012 and the monthly sales average from fiscal years 2013-2016. (*See id.*; D.N. 107-5, PageID # 599) Given that a significant drop in sales occurred from 2010 to 2011 (well before the alleged damage), the Court doubts that Plaintiffs' calculations accurately reflect the company's past and projected income.

13

Although they cite a Kentucky regulation and several cases from other jurisdictions in support of this claim, Plaintiffs fail to discuss the language of their policy or to offer any evidence that the siding already provided is inadequate. (*See id.*, PageID # 566, 575-78) In light of this failure of proof, the Court need not address 806 KAR 12:095 § 9(1)(b)—which, as this Court and its sister district have repeatedly held, is inapplicable in private litigation, *see The Woods Apartments, LLC v. U.S. Fire Insurance Co.*, No. 3:11-CV-00041-H, 2013 U.S. Dist. LEXIS 105582, at *4 (W.D. Ky. July 29, 2013)—or the various non-Kentucky cases cited by Plaintiffs. *Cf. Trout Brook S. Condo. Ass'n v. Harleysville Worcester Ins. Co.*, 995 F. Supp. 2d 1035, 1044 (D. Minn. 2014) (denying insurance company's motion for summary judgment where plaintiff presented evidence that replacement shingles offered by insurer were not "of 'like kind and quality'" as existing shingles). The Court notes, however, that in two previous cases involving policy language and circumstances similar to those presented here (as well as Plaintiffs' former counsel), it has declined to adopt a "matching" rule obligating insurers to replace undamaged siding or shingles. *See Cincinnati Specialty Underwriters Ins. Co. v. C.F.L.P. 1, LLC*, No. 3:14-cv-40-DJH-DW, 2015 U.S. Dist. LEXIS 132523, at *10-*19 (W.D. Ky. Sept. 30, 2015); *The Woods Apartments*, 2013 U.S. Dist. LEXIS 105582, at *3-*8.

**D.     Remaining Claims**

Plaintiffs' UCSPA and bad-faith claims were bifurcated from the claim asserting breach of the insurance policy. (D.N. 119) Because Plaintiffs cannot demonstrate that Auto-Owners breached the policy, these claims also fail.

> The gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant . . . with respect to a claim which the insurance company is contractually obligated to pay. Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute.

*Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000).

Finally, as Plaintiffs have not identified any provision of the policy that is in dispute, they are not entitled to a declaratory judgment. (*See* D.N. 1-2, PageID # 9 (seeking "a binding declaration of rights of the parties under the insurance policy")) Both Ky. Rev. Stat. § 418.040 (the statute invoked by Plaintiffs) and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), permit entry of a declaratory judgment only where an "actual controversy" exists.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Auto-Owners' motion for summary judgment (D.N. 99) is **GRANTED**.

(2) Auto-Owners' motion to strike Plaintiff's expert disclosures (D.N. 109) is **GRANTED**.

(3) Plaintiffs' motion to amend or supplement their expert disclosures (D.N. 111) is **DENIED**.

(4) All other pending motions are **DENIED** as moot. All dates and deadlines are **VACATED**.

(5) The trial of this matter, currently set for August 14, 2017, is **REMANDED** from the Court's docket.

(6) A separate judgment will be entered this date.

August 4, 2017

**David J. Hale, Judge**
**United States District Court**

cc: Jury Administrator